**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY, : | |
|     Plaintiff, : | |
| : | |
| v. : | Civil No. 2:20-cv-00759-JMG |
| : | |
| HALLER ENTERPRISES, LLC, *et al.,* : | |
|     Defendants. : | |

_____

| | |
|---|---|
| HALLER ENTERPRISES, LLC, : | |
|     Third-Party Plaintiff, : | |
| : | |
| v. : | |
| : | |
| CARRIER CORPORATION, : | |
|     Third-Party Defendant. : | |

_____

**<u>MEMORANDUM & ORDER</u>**

Defendant Haller Enterprises, LLC ("Haller") seeks permission to file a third-party complaint against Long's Heating & Cooling, Inc ("Long"). ECF No. 37. Plaintiff Great Northern Insurance Company ("Great Northern"), as subrogree of Bentley Systems Inc. ("Bentley"), opposes the request on substantive and timeliness grounds. ECF No. 38. For the reasons that follow, Haller's motion will be **GRANTED**.

    **I.**    **Factual and Procedural Background**

Following an electrical fire that broke out at Bentley's office building, Great Northern initiated this lawsuit to recover insurance payments related to the fire. *See* ECF No. 9 (Amended Complaint). Great Northern alleges that the fire was caused by a circuit breaker and circuit breaker panel failure from an electrical fault. *Id.* ¶ 22–24. As such, Great Northern brings various

claims against Industrial Connections & Solutions, LLC—who allegedly designed and manufactured the circuit breaker and circuit breaker panel—and Haller—who allegedly performed maintenance on an HVAC rooftop unit at the building on the day of the fire.[1] *Id.* ¶ 12–22.

Haller answered the amended complaint on March 27, 2020, *see* ECF No. 12, and a few days later, on April 10, 2020, timely filed a third-party complaint against the manufacturer of the HVAC unit. In accordance with the Court's scheduling order, the parties commenced discovery, exchanging written documents and deposing witnesses. Haller now moves to join another third-party defendant, Long, to this litigation. *See* ECF No. 37.

## II.     Legal Standard

A defendant may file a third-party complaint against a nonparty "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). The primary purpose in allowing third-party impleader is to "promote judicial economy by eliminating 'circuity of actions.'" 6 FED. PRAC. & PROC. CIV. § 1442 (3d ed.); *see also Naramanian v. Greyhound Lines, Inc.* Nos. 07-4757, 07-5222, 07-5312, 07-4758, 2010 WL 4628096, at *2 ("The purpose of Rule 14(a) is 'to permit additional parties whose rights may be affected by the decision in the original action to be joined and brought in so as to expedite the final determination of the rights and liabilities of all of the interested persons in one suit.'" (quoting *Glens Falls Indem. Co. v. Atl. Bldg. Corp.*, 199 F.2d 60, 63 (4th Cir. 1952)). Therefore, courts often examine whether the defendant demonstrated "some substantive basis" for the third-party claim. *See Battle v. Wal-Mart Stores, Inc.*, No. 19-945, 2020 WL 1939693, at *2 (E.D. Pa. Apr. 22, 2020).

---

[1] Specifically, Great Northern alleges that a Haller employee instructed Bentley personnel to switch the building's tripped circuit breaker to the "on" position, resulting in the electrical fault that caused the fire. *Id.* ¶¶ 21–22, 24.

After fourteen days have passed since serving its original answer, a defendant must seek leave of court before filing a third-party complaint. Fed. R. Civ. P. 14(a)(1). But once ninety days have passed since the filing of the answer, a motion for leave to file a third-party complaint will generally be denied as untimely under the local rules, unless it is shown that "the identity of the party sought to be joined, or the basis for joinder, could not, with reasonable diligence, have been ascertained within said time period." *See* Local Rule 14.1(a). In such cases, "a brief further extension of time may be granted by the court in the interest of justice." *Id.*

Yet courts have recognized that the time limit under the local rule is not "cast in stone," and they retain "substantial room" to exercise discretion. *See Yarus v. Walgreen Co.*, No. 14-1656, 2015 WL 5025479, at *3 (E.D. Pa. Aug. 24, 2015) (quoting *Roberts v. Leasure*, No. 05-3495, 2006 WL 1967335, at *2 (E.D. Pa. July 11, 2006)). In exercising this discretion, courts often consider the following factors: "(1) the possible prejudice to the plaintiff; (2) the potential for complication of issues at trial; (3) the probability of trial delay; and (4) the timeliness of the attempt to join third parties." *Id.* (quoting *Campbell v. Oxford Elecs. Inc.*, No. 07-4061, 2008 WL 2978550, at *2 (E.D. Pa. July 31, 2008)). Similarly, courts will also often take into account "whether the delay will cause any harm to the proposed third-party defendant, and whether the third-party plaintiff has any excuse for its delay." *Id.* (quoting *Torres v. Control Bldg. Servs.*, No. 09-0178, 2009 WL 2951026, at *1 (E.D. Pa. Sept. 11, 2009)). The burden is on the defendant to establish "special circumstances to excuse the delay." *Id.* (quoting *Bunzl Pulp & Paper Sale, Inc. v. Golder*, No. 90-4303, 1995 WL 89026, at *4 (E.D. Pa. Mar. 2, 1995)).

### III.     Discussion

Haller's motion was filed nearly six months after the time period provided in the local rules. *Compare* ECF No. 12 (answer filed on Mar. 27), with ECF No. 37 (motion filed on Dec.

14). Despite this delay, Haller urges this Court to exercise its discretion and allow the proposed third-party claims to proceed. *See* ECF No. 37. Great Northern presents three reasons why Haller has not met its burden to overcome the untimeliness of the request: the basis of the motion is "factually insufficient," Great Northern will suffer prejudice, and Haller has not justified the late request. ECF No. 38. The Court will address each of these concerns in turn below.

### A. Substantive Basis

Great Northern initially challenges the factual sufficiency of Haller's motion. *See* ECF No. 38-1, at 2–3. Haller moves to join Long—who previously performed maintenance on the HVAC rooftop unit—as a third-party defendant based on two theories. First, Haller accuses Long of improperly installing the condenser fan motor in the HVAC rooftop unit "with unsafe wire splices and capping." ECF No. 37-2, at 4, 7–8. According to Haller, the improper installation necessitated the maintenance on the unit on the date of the electrical fire. *Id.* at 5. Second, Haller suggests that Long experienced a similar tripping of the circuit breaker in 2008 to the tripping of the circuit breaker that occurred on the date of the electrical fire. *Id.* According to Haller, the tripping of the circuit breaker should have alerted Long that the HVAC unit was improperly wired. *Id.* Had Long fixed the wiring at that time, Haller asserts that the February 2018 electrical fire could have been avoided. *See id.*

Great Northern, however, disputes that Haller is able to establish causation between Long's work on the HVAC unit and the February 2018 electrical fire. ECF No. 38-1, at 2–3. Great Northern points out that there were two condenser fan motors in the HVAC unit, one of which is relevant to the electrical fire. *See id.* at 2. The records apparently do not indicate which motor Long replaced, and therefore, Great Northern questions whether Haller is able to show causation between Long and the fire. *Id.* Moreover, Great Northern posits that the prior tripping

4

of the circuit breaker is irrelevant, considering it occurred during work on a different HVAC unit. *Id.*

At this stage, the Court finds that Haller has shown that there is a sufficient factual basis for a claim against Long. The parties agree that in the event Haller is liable for damages, it would be able to pursue a contribution action against any potentially responsible third parties, such as Long. *See* ECF No. 37-2, at 8; ECF No. 38-1, at 4. Despite the possible flaws that Great Northern has highlighted, Haller has alleged that Long's specific actions may have contributed to the damages from the electrical fire. Haller need not prove that its claim would be successful, at this time, just that there is "some substantive basis" for it.

### B. Prejudice to Great Northern and Probability of Trial Delay

Next, Great Northern argues that it will suffer prejudice if Haller is allowed to join Long at this juncture in the litigation. ECF No. 38-1, at 3–4. Specifically, Great Northern anticipates that the late joinder will lead to further motion practice and discovery causing significant delays and duplication of work. *Id.* The delay will be both costly and time consuming. *Id.* Haller does not address these concerns. Instead, it contends that the other parties will not be prejudiced because the facts that relate to Long are the same as those that relate to the other defendants.[2] ECF No. 37-2, at 8. If Haller is unable to join Long, then it argues that it will be the party that is prejudiced, as it may be forced to incur fees related to a separate contribution action against Long. *Id.*

The Court is sympathetic to Great Northern's concerns regarding the inevitable delay that will result by Long's joinder in this action. "However, some delay, alone, does not warrant

---

[2] Great Northern did not specifically respond to Haller's argument regarding the potential complication of issues at trial. Nevertheless, the Court agrees with Haller that Long's introduction into this litigation will not unduly complicate matters at trial, as the facts related to Long are intertwined with the facts related to the other defendants.

denial of joinder." *Battle*, 2020 WL 1939693, at *3; *see also Hitachi Cap. Am. Corp. v. Nussbaum Sales Corp.*, No. 09-731, 2010 WL 1379804, at *5 (D.N.J. Mar. 30, 2010) ("[D]elay is expected with the majority of Rule 14 motions. If such delay was dispositive in dismissing Rule 14 Motions, few impleader motions would be granted." (citations omitted)). Discovery in this case, including expert discovery, is still ongoing, and no dispositive motions have been filed. The original scheduling deadlines have recently been extended for the first time, with discovery now closing in early May and trial listed for late July, and should accommodate for the addition of Long to this litigation. *See* ECF No. 40. Moreover, these new deadlines remain earlier than those initially requested by the parties in their joint Rule 26(f) report, suggesting that Great Northern will not be severely prejudiced by any delay caused in allowing the third-party complaint to be filed.[3] *See* ECF No. 25 (requesting the deadline for expert depositions to be May 21, 2021, and the trial date for September 2021).

With respect to Great Northern's argument about the duplication of certain work completed thus far, the Court finds that any such prejudice is outweighed by the interests of judicial economy. Any duplication of work at this stage pales in comparison to the amount of duplicate work that the courts and parties would be faced with in the event a separate contribution action was initiated. Accordingly, these factors weigh in favor of granting Haller's motion.

### C. Timeliness and Excuse for Delay

Finally, Great Northern argues that Haller has not justified the delay in its request for joinder. ECF No. 38-1, 4–6. According to Great Northern, Haller was aware of Long's identity

---

[3] It should also be noted that Great Northern has been on notice at least since the preparation and filing of the Joint Rule 26(f) Report that Haller was interested in potentially joining new parties based on further discovery and investigation into the maintenance history of the HVAC unit and circuit breaker. ECF No. 25, at 5.

and the basis for its contribution claim prior to the expiration of the period for filing a third-party complaint. *Id.* To support this allegation, Great Northern relies on (1) the date (June 19, 2020) it produced the maintenance records that Haller references in its motion; (2) prelitigation inspections conducted by Haller's experts and later lab examinations that focused on the condenser fan motor; and (3) the access Haller had to its own technicians prior to their depositions such that counsel could have reviewed the physical evidence, records, and expert's theories at an earlier date. *Id.*

Not surprisingly, Haller's timeline of when it learned the basis of the contribution claim against Long differs. According to Haller, the relevant maintenance records were turned over in August 2020. ECF No. 37-2, at 7. Haller had attempted to subpoena Long, and other service providers, for other records to no avail. *Id.* The turning point appears to be the deposition testimony of Haller's service technicians, taken on October 20 and November 6, 2020, who revealed the improper installation of the motor. *See id.* at 7–8. After these depositions, Haller consulted with its experts who concluded that Long needed to be included in this action, and Haller thereafter filed the instant joinder motion. *Id.* at 8.

Although the motion is untimely, the Court concludes that the delay here was justified. This lawsuit involves complex determinations of liability requiring a significant amount of technical expert analysis. After confirming the importance of Long's involvement in the events leading to the electrical fire with its experts, Haller's counsel was diligent in the filing of this motion. As such, the Court will exercise its discretion and allow the joinder of Long to this action.

## IV. Conclusion

Having weighed the various factors, the Court determines that the joinder of Long should be permitted. Despite the apparent untimeliness of the motion, judicial economy favors permitting the addition of Long to this action, and the Court will exercise its discretion in granting the motion.

It is therefore on this 6th day of January, 2021, upon consideration of Defendant/Third-Party Plaintiff Haller Enterprises, LLC's Motion for Leave to File a Third-Party Complaint Against Long's Heating and Cooling, Inc. (ECF No. 37) and Plaintiff Great Northern Insurance Company's response in opposition (ECF No. 38), hereby **ORDERED** that Haller's motion is **GRANTED.** Haller shall file its Third-Party Complaint no later than **January 20, 2021**.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge